IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRCT OF GEORGIA
ATHENS DIVISION

ANDREW L. WILLIAMS,                                  Civil Action File No.
                                                    3:25-cv-00033-CDL

                  Plaintiff,

v.

WAL-MART STORES EAST, LP

                  Defendant.

_____/

**DEFENDANT WAL-MART STORES EAST, LP'S BRIEF IN SUPPORT OF ITS
MOTION TO SET ASIDE DEFAULT JUDGMENT, OPEN DEFAULT, OR, IN
THE ALTERNATIVE, MOTION FOR NEW TRIAL**

COMES NOW Defendant Wal-Mart Stores East, LP, by and through

undersigned counsel, and, pursuant to O.C.G.A. §§ 9-11-55, 9-11-60, 5-5-40, 5-5-

41, Fed. R. Civ. Proc. 59, and Fed. R. Civ. Proc. 60,[1] respectfully moves to set

aside the judgment issued on January 15, 2025; to set aside the default

---

[1] Contemporaneously with the filing of this Motion, Walmart is filing a Notice of
Removal, and is removing this case to federal court on the basis of diversity
jurisdiction. "Once a civil case is removed to federal court, the Federal Rules of
Civil Procedure apply to that action." *Amin-Patel v. Emory Univ.*, CIVIL ACTION
FILE NO. 1:19-CV-1213-MHC, 2019 WL 13268143, at *2 (N.D. Ga. July 8, 2019)
(*citing* Fed. R. Civ. P. 81(c)(1)). For this reason, the brief in support of this Motion
cites the federal rules and case law that will be applied by the district court after
removal in addition to the Georgia equivalents.

Page 1

judgment issued on September 25, 2024; and to open the default; or, in the alternative, to grant new trial. As demonstrated below, the failure to file an answer to the Complaint was the result of excusable neglect, there is good cause open the default, and Walmart has a meritorious defense.   In support of this Motion, Walmart pays court costs, file an Answer instanter under oath, and announces that it is ready for trial.   For these reasons, the Court should grant this Motion and allow Walmart to defend this case on the merits.

## I.    BACKGROUND AND FACTS

### a. The lawsuit

On February 4, 2024, Plaintiff Williams allegedly slipped and fell at a Walmart store in Hartwell, Georgia.   On August 5, 2024, Plaintiff sued Walmart in the Superior Court of Hart County, Georgia.

### b. Circumstances of the sheriff's service on the Store

On August 3, 2024, Georgia's Governor issued an executive order declaring a state of emergency for the entire State due to Tropical Storm Debby.   (Exhibit "A," Affidavit of Food & Consumables Coach Kayla Parham ("Parham Aff.") ¶¶ 1-3; Exhibit "J," Georgia State of Emergency Orders and Press Release; Exhibit "B," Affidavit of Nick DiMarco ("DiMarco

Aff.") ¶ 5). The state of emergency, which the Governor extended several times, lasted through August 20. (Ex. A, Parham Aff. ¶ 3; Ex. B, DiMarco Aff. ¶ 5; Ex. J, Georgia State of Emergency Orders and Press Release).

Walmart often experiences substantially increased demand before and during major weather events, as people stock up on food and merchandise in preparation for it and, especially in the case of the Hartwell store during this storm, as other people traveled to the area to avoid the most direct storm path. (Ex. A, Parham Aff. ¶ 3; Ex. B, DiMarco Aff. ¶ 5). As a result, during that time, the store was preparing for disruptions, not only from the storm itself, but from the anticipated heightened demand. (Ex. A, Parham Aff. ¶ 3; Ex. B, DiMarco Aff. ¶ 5).

Kayla Parham was a manager at the store. She managed the Food and Consumables department, which, as is typical with weather events, was the most stressed department. (Ex. A, Parham Aff. ¶ 3; Ex. B, DiMarco Aff. ¶ 5).

During the declared emergency, on August 7, 2024, a sheriff's deputy served Plaintiff's lawsuit papers on Parham while she was working at the store. (Ex. A, Parham Aff. ¶ 3; Ex. B, DiMarco Aff. ¶ 5).

c. <u>The store's system and procedural safeguards regarding service</u>

The store's Asset Protection Operations Coach, Nick DiMarco, was responsible for transmitting legal documents served at the store to Walmart's legal department.    (Ex. B, DiMarco Aff. ¶¶ 1-2).    The store has a system and procedural safeguards for ensuring that transmittal. (Ex. B, DiMarco Aff. ¶ 2; Ex. A, Parham Aff. ¶ 4).    Salaried managers who are served with process are instructed to provide the papers to DiMarco.    (Ex. B, DiMarco Aff. ¶ 2; Ex. A, Parham Aff. ¶ 4).    If legal papers were left at DiMarco's desk rather than handed to him, the manager would follow up to confirm receipt. (Ex. B, DiMarco Aff. ¶ 2; Ex. A, Parham Aff. ¶ 4).    DiMarco would, in turn, send the papers electronically to the legal department.    (Ex. B, DiMarco Aff. ¶ 2). He would receive a notification after the legal department received the papers.    (Ex. B, DiMarco Aff. ¶ 2).

d. <u>Excusable neglect</u>

DiMarco was not working the day Plaintiff's papers were served. (Ex. B, DiMarco Aff. ¶ 4). Parham thus left them at his desk as instructed.    (Ex. A, Parham Aff. ¶ 3; Ex. B, DiMarco Aff. ¶ 6).    But when DiMarco returned to the store on August 9, someone had moved the lawsuit papers to a file

Page 4

cabinet drawer unrelated to delivered legal papers and which happened to contain files in similar manila folders.     (Ex. B, DiMarco Aff. ¶¶ 3-4, 6).     He thus did not receive the lawsuit papers, and did not transmit them to the legal department.     (Id.).

On February 19, 2025, DiMarco first learned of this lawsuit after the State court had already entered a default judgment against Walmart.     (Ex. B, DiMarco Aff. ¶ 3).     After an extensive search DiMarco then found the papers in the back of the filing cabinet. (Id.).

Parham, in turn, neglected to confirm DiMarco's receipt in view of the severe weather exigency.     (Ex. A, Parham Aff. ¶ 5; Ex. B, DiMarco Aff. ¶ 6).     Had she not been preoccupied with the ongoing storm and the resultant unusual demands in the food department, she would have done so.     (Ex. A, Parham Aff. ¶ 5).     This is the only time that Parham ever had an issue in transmitting legal documents served on her to the AP Ops Coach. (Id.).     DiMarco then would have transmitted them to the legal department in the ordinary course.     (Ex. B, DiMarco Aff. ¶ 2).     During DiMarco's ten-year tenure in this role at this and other Georgia Walmart stores, DiMarco is unaware of any other failure of the service protocols.     (Ex. B, DiMarco Aff.

¶ 7).

The mid-emergency service on Parham was the <u>only service or notice</u> provided to Walmart of Plaintiff's lawsuit before Plaintiff secured a default judgment for millions of dollars.    (Ex. B, DiMarco Aff. ¶ 7). On February 18, 2025, Plaintiff's counsel delivered the default judgment and associated papers to Walmart's registered agent a letter demanding payment.    (Exhibit "N," Letter from Plaintiff's Counsel).

   e.   <u>The underlying incident and Walmart's meritorious defenses</u>

The accident happened on the evening of February 4, 2024, when Plaintiff was shopping at the store.   He claims that he slipped on soup that had been spilled.   (Exhibit "H," Picture of Spill).

The accident was recorded on the store's video equipment.   (Exhibit "D," Video-1 at 7:00:20 p.m. to 7:00:26 p.m.; Exhibit "E," Video-2 at 7:00:20 p.m. to 7:00:26 p.m.; Exhibit "F," Still Shots from First Camera Angle at 6-11; Exhibit "G," Still Shots from Second Camera Angle at 1-12).

A store associate named Brittany Wilson was working at the store that day. (Exhibit "C," Affidavit of Brittany Wilson ("Wilson Aff.") ¶¶ 1-2).   She had followed the store's safety policies and procedures for looking for and removing

Page 6

spills, foreign objects, and other safety hazards.  (Id. ¶ 4).  If Wilson saw any spill, she would clean it or guard it until another associate arrived.  (Id.).

Wilson had inspected the floor in the area of the accident less than fifteen minutes beforehand, and it was free of any hazards.  (Ex. C, Wilson Aff. ¶ 5). There was no spill.  (Id.). Wilson then left the area, and was not there when the accident happened.  (Id. ¶¶ 6-7).

The video shows that, about three minutes before the accident, another customer dropped a container of soup in the area.  (Ex. D, Video-1 at 6:57:21 p.m. to 6:57:30 p.m.; Ex. F, Still Shots from First Camera Angle at 1-5; Exhibit "I," Associate Witness Statement of Aunwan Murray; Exhibit "K," Picture of Soup Container Dropped by Customer).  No associate was there, or saw the spill during the three minutes it was present before the accident.  (Ex. C, Wilson Aff. ¶ 6).

## ARGUMENT AND CITATION OF AUTHORITY

Because Walmart files this Motion contemporaneously with its removal to federal court, Walmart first addresses these Motions under the Federal Rules of Civil Procedure, which will control after removal.  "Under federal practice, a removed case proceeds according to the Federal Rules of Civil Procedure and is treated as though it had been commenced originally in the federal court." *Cotton*

*v. Federal Land Bank of Columbia*, 246 Ga. 188, 190 (1980) (*citing Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, etc.*, 415 U.S. 423, 437 (1974)). "Repleading according to the federal rules is generally not required unless there is a substantial difference between the state and federal practice." *Cotton* at 190 (*citing Borton v. Connecticut Gen. Life Ins. Co.*, 25 F.Supp. 579 (D.C.Neb.1938); 14 Wright, Miller & Cooper, Fed. Prac. & Proc., Civil, 747, s 3738 (1976 Ed.)). In turn, Georgia follows the same standard, and "repleading" is only required upon directive of the trial court:

> Where, as here, a pleading (assuming it meets the statutory requirements of a pleading, as discussed hereinafter) has been timely filed, logic, reasoning and comity all support the conclusion that a similar rule should be applied by the Georgia courts upon remand. Since the Georgia Civil Practice Act and the Federal Rules of Civil Procedure are similar in most respects, the instances in which repleading would be required would be few, *and such requirement should be upon directive of the trial court.*

*Cotton* at 190-191 (emphasis added).

Default judgments are disfavored because they run contrary to the policy of deciding cases on their merits. *See Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993). Courts should construe the Rule 60(b) requirements liberally in the context of a default judgment. *See, e.g., Solaroll Shade & Shutter v. Bio–Energy Sys.*, 803 F.2d 1130, 1132 (11th Cir. 1986). This Court has wide discretion to do so.

Page 8

*Robinson v. United States*, 734 F.2d 735. 739 (11th Cir. 1984). And it may set aside a default judgment entered by a State court prior to removal. *Motley v. Option One Mortg. Corp.*, Civil Action No. 2:08cv659–WHA, 2009 WL 2059089, at *1 (M.D. Ala. July 13, 2009); *Ware v. Fleetboston Financial Corp.*, 190 Fed.Appx. 59, 63-64 (11th Cir. May 2, 2006) ("[B]ecause the state action was properly removed to federal district court under original jurisdiction, the district court had authority to set aside orders of the state court under Rule 60(b)").*See also Abdullah v. PennyMac Loan Services, LLC*, Civil Action No. 1:24-cv-03627-SDG-RGV, 2024 WL 5325799, at *3 (N.D. Ga. Oct. 11, 2024) (citing *Hester*); *Hester v. Gulfstream Property and Casualty Ins. Co.*, Case No. 5:19cv170-MCR-MJF, 2019 WL 8063349, at *1 (N.D. Fla. Nov. 8, 2019) (citing *Aiken*); *Aiken v. Waffle House, Inc.*, 509 F.Supp.2d 541, 545-546 (D.S.C. 2007). "A federal court has the power to set aside a default entered in state court in three situations: (1) 'when a state court lacked jurisdiction to make an entry of default;' (2) 'when a state court could have vacated its own default judgment;' and (3) 'when a federal court could have vacated the entry of default.'" *Aiken* at 545.

Rule 60(b) of the Federal Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment." A final judgment under Rule 60(b) is any judgment that is an appealable order. *Solaroll Shade & Shutter Corp. v. Bio-*

*Energy Sys., Inc.*, 803 F.2d 1130, 1131 (11th Cir. 1986).

## I.    THE JUDGMENT SHOULD BE SET ASIDE.

### 1.    <u>Excusable neglect and no prejudice.</u>

The default judgment was the result of excusable neglect and should be set aside under Rule 60(b)(1). The Supreme Court and the Eleventh Circuit clarified the meaning of "excusable neglect" in *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 393 (1993) (holding court abused its discretion in refusing to permit late filing of a proof of claim); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir.1996) (holding district court's failure to apply *Pioneer* factors in Rule 60(b) "excusable neglect" motion constituted abuse of discretion). In *Cheney*, the Eleventh Circuit explained *Pioneer*'s holding that "at least for purposes of Rule 60(b), excusable neglect is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 850 (internal quotation marks omitted). The panel applied these factors to this question: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (*quoting Pioneer*, 507 U.S. at 395). The determination of what constitutes excusable neglect is holistic, taking into account the totality of the relevant circumstances. <u>See</u>, e.g., *Pioneer*, 507 U.S. at 389, 395 (discussing excusable neglect under Bankruptcy Rule 9006(b)(1)).

The moving party must show that it had a meritorious defense, that the Plaintiff would not be prejudiced if the judgment were set aside, and that it had a "good reason" for failing to respond to the complaint. See In re Worldwide Web Systems, Inc. v. Feltman, 328 F.3d 1291, 1295 (11th Cir. 2003).

Here, Parham's failure to ensure DiMarco's receipt of the served papers was excusable.   The service occurred in the midst of an official State emergency, when a tropical storm caused significant disruption and Parham faced significant exigencies.   The store had a system of procedural safeguards in place for the handling of served documents, and Parham followed the first step of that system by placing the lawsuit papers on DiMarco's desk.   But when those papers were moved to the back of a filing cabinet that was not used for served papers, Walmart's safeguards lapsed because Parham, preoccupied with storm preparations, neglected to confirm DiMarco's receipt.   On February 18, 2025, when Plaintiff served Walmart's registered agent for service with a demand to pay the resultant multimillion dollar default judgment only one day after the term of court ended, Walmart investigated and promptly removed the case and moved to set the judgment aside.

This sequence of events establishes excusable neglect that justifies the setting aside of the default judgment, opening the default, and allowing Walmart to defend this case on the merits.   *See YHB Management Corp. v. Fountain Bleau Capital, LLC,* Case No. 4:21-CV-191 (CDL), 2022 WL 4657663, at *2 (M.D. Ga. Sept.

Page 11

20, 2022); *Hurtado v. Balerno International Ltd.*, Case No. 17-62200-CIV-COHN-SELTZER, 2018 WL 4053122, at *4 (S.D. Fla. Aug. 24, 2018); *Andrade v. Erin Capital Management, LLC*, Case No. 09-21186-CIV-HUCK/O'SULLIVAN, 2010 WL 11505110, at *9-10 (S.D. Fla. Jan. 14, 2010); *Beamer v. Fadel-II Foods*, Civil Action No. 10-CV-10104, 2012 WL 1068708, at *4-5 (E.D. Mich. Mar. 29, 2012).   Applying the *Pioneer* factors to this case favors setting aside the default judgment.   There is no danger of prejudice to Plaintiff.   The case is still within the two-year limitations period.   The evidence and witnesses regarding the incident are still available, as shown above in the statement of facts.   There has been minimal delay.   There is no potential impact on judicial proceedings because discovery can still be had and will not be any more complicated than it would have been.   And there is no indication that the Court's evaluation of this case in the future will be made more difficult by the delay.   There is no evidence that this default was the result of willful misconduct on the part of Walmart.   Finally, with the evidence presented showing "excusable neglect," and the speed of Walmart's actions after notice on February 18, 2025, Walmart has demonstrated good faith.

Additionally, there is another factor that weighs in favor of Walmart's Motion: The large size of the award.   "Delay that imposes slight injury does not call for multi-million-dollar awards." *Strabala v. Zhang*, 318 F.R.D. 81, 91 (N.D. Ill. Nov. 18, 2016) (*quoting Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007)). *See also Fed. Trade Comm'n v. Construct Data Publishers*, No. 13-cv-01999, 2014 WL

7004999, at *6 (N.D. Ill. Aff. 11, 2014) ("the disproportionate size of the default judgment—$9.1 million—in comparison with the minimal prejudice suffered by the FTC represents good cause to vacate the default judgment"); *Owens-Illinois, Inc. v. T & N Ltd.*, 191 F.R.D. 522, 529 n.10 (E.D. Tex. Feb. 28, 2000) ("Other Court have likewise been influenced by the size of the judgment at issue," and citing in footnote collection of cases).   In *Seven Elves, Inc. v. Eskenazi*, for instance, 635 F.2d 396, 403 (5th Cir. 1981), the Fifth Circuit vacated a judgment, a small fraction of the amount of the judgment in this case, in part because its $250,000 amount was "very great, itself militating in favor of a full trial on the merits."[2] Here, just as in *Seven Elves*, the award of more than $3.3 million provides additional justification for vacating the judgment in favor of a full trial on the merits.   $3.3 million is disproportionate in comparison to the minimal prejudice (if any) to Plaintiff. Moreover, as described below, the evidence before the Court, including video, does not demonstrate an incident that would normally result in an award of $3.3 million.

    **2.**    **Meritorious Defenses.**

---

[2] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for [the court of appeals], the district courts, and the bankruptcy courts . . . ." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Walmart also has meritorious defenses.   To recover, Plaintiff must prove, among other things, that Walmart had actual or constructive knowledge of the alleged hazard.   Robinson v. Kroger, 268 Ga. 735 493 S.E.2d 403 (1997); Alterman Foods v. Ligon, 246 Ga. 620, 272 S.E.2d 327 (1980).

A.      The Store conducted reasonable inspections of the incident area.

Georgia courts have held that inspections conducted less than 35 minutes before the injury-causing event are adequate as a matter of law. See, e.g., *Higgins v. Food Lion, Inc.*, 254 Ga. App. 221, 222 (2002) (inspection conducted 35 minutes before fall was adequate as a matter of law); *Hopkins v. Kmart Corp.*, 232 Ga.App. 515, 517-518 (1998) (inspection conducted 30 minutes before fall was adequate as matter of law); *Flanagan v. Quiktrip Corp.*, No. 1:13-cv-3836-WSD, 2015 WL 3472957, at *9 (N.D. Ga. June 1, 2015) (summary judgment for defendant proper where inspection was performed 30 minutes before accident); *Butler v. Lanier Park Regional Hosp.*, 220 Ga. App. 386, 387 (1996) (summary judgment for defendant proper where inspection was performed 20 minutes before accident); *Wallace v. Wal-Mart Stores, Inc.*, 272 Ga. App. 343, 346 (2005) (inspection conducted 15–20 minutes before fall adequate as a matter of law); *Super Discount Markets, Inc. v. Clark*, 213 Ga. App. 132, 134 (1994) (summary judgment for defendant proper

Page 14

where inspection was performed 15 to 20 minutes before accident).  See also *Adamchick v. Cracker Barrel Old Country Store*, 281 Ga. App. 677 (2006);   *Flanagan v. Quiktrip Corp.*, No. 1:13-cv-3836-WSD, 2015 WL 3472957, at *9 (N.D. Ga. June 1, 2015) (summary judgment for defendant proper where inspection was performed 30 minutes before accident).

Here, the area of the incident was visually inspected by Associate Brittany Wilson less than fifteen minutes before the incident, and, at that time, nothing was on the floor. That fact scenario presents a meritorious defense, as there is a long line of cases granting summary judgment based upon an inspection shortly before the incident.  *Walmart Stores East, L.P. v. Benson*, 343 Ga. App. 74, 79-80 (2017) (inspection conducted 26 minutes before incident was reasonable as a matter of law); *Doak v. U. S. Prime Property, Inc.*, 220 Ga. App. 564, 566 (1996) (inspections of common area of shopping mall every half hour were reasonable); *Drake v. Kroger Co.*, 213 Ga. App. 72, 72–73 (1994) (30 minutes).   Accordingly, through this evidence of a reasonable inspection, Walmart has presented a meritorious defense.

B.      The hazard did not exist for an unreasonable amount of time prior to the subject incident.

Because Walmart has provided evidence of reasonable inspections, the burden shifts to Plaintiff to present admissible evidence that the alleged hazard

existed for an unreasonable amount of time. *Walmart Stores East, L.P. v. Benson*, 343 Ga. App. 74, 80 (2017).   Failure to establish that the alleged hazard was allowed to exist for such a time that the proprietor should have discovered it is fatal to the plaintiff's case. Id.   "In cases involving grocery stores, parking lots, and restaurants, [the Georgia Court of Appeals has] found that 15 or 20 minutes was a legally insufficient amount of time for a proprietor to discover a foreign substance on the floor."   *Gleaton v. APAC-Georgia*, 228 Ga. App. 52, 55 (2) (1997).

Here, in addition to Associate Wilson's testimony, there is video evidence showing that a customer dropped a soup container in the area of the incident about three minutes before the incident.   Thus, there is evidence that the spill did not exist for an unreasonable amount of time, and, as a result, Walmart has presented a meritorious defense.

      C.    <u>Video and other evidence do not demonstrate an incident that caused injury and damages warranting an award of $3,300,000</u>.

Causation and damages are both required elements that Plaintiff would have to prove in this premises liability case.   "[C]ausation is always an essential element in slip or trip and fall cases." *Callaway Gardens Resort, Inc. v. Grant*, 365 Ga. App. 222, 224 (2022) (quoting *Canaan Land Properties v. Herrington*, 330 Ga. App.

17, 19 (1) (2014)). "[T]o recover damages in a tort action, a plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury." *Atlanta Obstetrics and Gynecology Group v. Coleman*, 260 Ga. 569, 569, 398 S.E.2d 16 (1990). Here, the video shows that Plaintiff slipped and fell; got up on one knee within seconds; and stood up under his own power within two minutes of his fall. (Ex. D, Video-1 at 7:00:20 p.m. to 7:03:00 p.m.; Exhibit "E," Video-2 at 7:00:20 p.m. to 7:03:00 p.m.) No ambulance was called. (Exhibit "L," Typed Incident Report). Plaintiff complained that his knee popped and was aching. (Ex. M, Typed Incident Report). But Cashier Gwendolyn Fisher, who was one of the first associates to respond to the incident, reported that she observed no signs of physical injury. (Exhibit "M," Associate Witness Statement of Gwendolyn Fisher). And video shows Plaintiff walking after the incident. This evidence does not show an incident that one would expect to cause an injury and resulting compensatory damages in the amount of $3,300,000. Accordingly, Walmart has presented meritorious defense as to causation and damages.

### 3. O.C.G.A. § 9-11-60(d)

O.C.G.A. § 9-11-6)(d) authorizes the Court to set aside a judgment where there is: (1) Lack of jurisdiction over the person or the subject matter; (2) Fraud, accident, or mistake or the acts of the adverse party unmixed with the negligence

Page 17

or fault of the movant; or (3) A nonamendable defect which appears upon the face of the record or pleadings.   Further, O.C.G.A. § 9-11-60(g) provides: "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."   In this case, the third prong is satisfied; there is a nonamendable defect, because Walmart was not provided notice of the motion for default, the hearing on the motion for default, the September 2024 order entering default, the hearing to determine damages, or the final judgment.

As a general rule, there is no ongoing requirement to provide notice to a party that has failed to file responsive pleadings after being served with process. *Winslett v. Guthrie*, 326 Ga. App. 747, 752-753 (2014); O.C.G.A. § 9-11-5(a) ("However, the failure of a party to file pleadings in an action shall be deemed to be a waiver by him or her of all notices, including notices of time and place of trial and entry of judgment, and all service in the action, except service of pleadings asserting new or additional claims for relief, which shall be served as provided by subsection (b) of this Code section."); O.C.G.A. § 15-6-21(c) ("When he or she has so decided, it shall be the duty of the judge to file his or her decision with the clerk of the court in which the cases are pending and to notify the attorney or attorneys

Page 18

of the losing party of his or her decision. Said notice shall not be required if such notice has been waived pursuant to subsection (a) of Code Section 9-11-5."). But in the narrow context of this case, where (a) there was excusable neglect, (b) the defaulting party did not otherwise have notice of the proceeding, and (c) the Court's statutory term lapsed before the defaulting party learned of the proceeding, both Georgia and federal due process requires such notice.

Under the predecessor statute for O.C.G.A. § 15-6-21(c), a Georgia trial court was required to mail notice to the defendant of an entry of default and an entry of final default judgment. *Vangoosen v. Bohannon*, 236 Ga. App. 361, 361-362 (1999). As noted by the Court of Appeals in *Vangoosen*, the Georgia Supreme Court recognized in *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 148-149 (1980), that failure of the trial court to notify the losing party of an order causes prejudice to that party by jeopardizing the party's right to appeal. For that reason, under *Vangoosen*, the failure of the trial court to mail notice to Walmart of default judgment on September 24, 2024, and the final judgment on January 15, 2025, would be considered clerical errors under O.C.G.A. § 9-11-60(g) that would necessitate vacating each of those orders.

Further, were it not for the second sentence of O.C.G.A. § 9-11-5(a), failure to provide notice of the motion for default, the hearing on the motion for default,

and the hearing to determine damages would be a nonamendable defect on the face of the record under O.C.G.A. § 9-11-60(d)(3).   *Randall v. Randall*, 274 Ga. 107, 109 (2001).   "[N]otice of the hearing . . . shall be served not later than five days before the time specified for the hearing . . . ."   *Randall v. Randall*, 274 Ga. 107, 109 (2001) (quoting OCGA § 9–11–6(d)).   "Compliance with the notice requirement is mandatory, not discretionary." *Randall* at 109 (*citing Edens v. O'Connor*, 238 Ga. App. 252(1) (1999)).   Due process is denied by lack of notice. "A fundamental requirement of due process in any proceeding which is to be accorded finality is notice that is reasonably calculated to inform interested parties of an impending hearing and afford them an opportunity to present their objections."   *Randall* at 109 (*quoting Wright v. Wright*, 270 Ga. 229, 230 (1998)).

At least in cases like this, where there is excusable neglect and the defaulting party otherwise had no notice of the litigation or any of it proceedings, and the Court's statutory term lapsed in the interim (thus removing the trial court's inherent power to reopen a default judgment without satisfying teh statutory standard), the intervening statutory provision obviating the previous notice requirement contravene the defaulting party's process rights under the U.S. and Georgia Constitutions.   Walmart asks the Court to strike down these provisions as applied in this case, and to vacate the judgment for a nonamendable defect.

Page  20

### 4.    O.C.G.A. § 9-11-55 – Opening Default

Under Georgia law, "[i]n situations where a final judgment has been entered, default cannot be opened unless and until the final judgment has been set aside pursuant to OCGA § 9–11–60(d)."  *Pine Tree Publishing, Inc. v. Community Holdings, Inc.*, 242 Ga. App. 689, 690 (2000).   O.C.G.A. § 9-11-55(b) provides:

> **Opening default**. At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial.

The Court of Appeals has held that since "the public policy of this state strongly favors resolution of cases on their merits, the remedial provisions for opening a default are to be forgivingly applied." *Nelson v. Board of Regents of University System of Ga.*, 307 Ga. App. 220, 223 (2010).

> For this reason, a default should generally be set aside "where the defendant acts with reasonable promptness and alleges a meritorious defense," so as to avoid a "drastic sanction" that "should be invoked only in extreme situations."

*Nelson v. Board of Regents of University System of Ga.*, 307 Ga. App. 220, 223 (2010)

(quoting <u>Exxon Corp. v. Thomason</u>, 269 Ga. 761, 761-62 (1998)). "Put another way, this Court can (and should) only evaluate the reasonableness of [Defendant]'s proffered justification for opening a default on the 'proper case' ground in the context of considering whether the trial court's acceptance of this justification as a basis for opening the default amounts to a manifest abuse of discretion." <u>Id</u>.

Here, as shown above, Walmart has fulfilled all of the requirements of O.C.G.A. § 9-11-55(b).   Walmart has paid costs, filed an Answer instanter under oath, presented a meritorious defense, provided evidence of excusable neglect (and proper case), and hereby announces that it is ready for trial.   Accordingly, Walmart respectfully requests the Court open the default.

     **5.**      <u>**O.C.G.A. §§ 5-5-40, 5-5-41 and Fed. R. Civ. Proc. 59**</u>

Finally, for all the reasons stated above, in the alternative, Walmart also moves for a new trial—at least as to damages—pursuant to O.C.G.A. §§ 5-5-40, 5-5-41, and Federal Rule of Civil Procedure 59.   Walmart raises the following grounds for new trial: (1) the judgment and award of damages is contrary to evidence, justice and equity (O.C.G.A. § 5-5-20); and (2) the judgment and award of damages is contrary to the weight of the evidence (O.C.G.A. § 5-5-21).

**<u>CONCLUSION</u>**

For these reasons, Walmart respectfully requests that the Court grant its

Page 22

Motion and set aside the judgment; set aside the default; open the default; accept

Walmart's contemporaneously-filed Answer as timely; and allow Walmart to

defend this case on the merits.   Or, in the alternative, Walmart prays the Court

vacate the judgment and grant a new trial at least as to damages.

Respectfully submitted this 6th day of March, 2025.

McLAIN & MERRITT, P.C.

/s/ Nicholas E. Deeb
Nicholas E. Deeb
Georgia Bar No. 117025
Attorney for Defendant
WAL-MART STORES EAST, LP

3445 Peachtree Road, N.E., Suite 500
Atlanta GA   30326
(404) 365-4535
(404) 364-3138 (fax)
ndeeb@mmatllaw.com

The undersigned counsel certifies that the foregoing **Brief** has been prepared with one of the fonts and point selections approved by the court in LR 5.1B.

/s/ Nicholas E. Deeb
Nicholas E. Deeb

Page  23